IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>and<br><br>THE COMMONWEALTH OF KENTUCKY,<br><br>   Plaintiffs,<br><br>   v.<br><br>J.L. FRENCH LLC,<br><br>and<br><br>NELSON METAL PRODUCTS LLC,<br><br>   Defendants. | Case No. _____ |

## COMPLAINT

1. Plaintiffs, the United States of America, by authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Commonwealth of Kentucky, on behalf of the Kentucky Department for Environmental Protection, through the undersigned attorneys, file this Complaint and allege as follows:

### NATURE OF THE ACTION

2. This is a civil action brought against Defendants J.L. French LLC (formerly J.L. French Corporation) and Nelson Metal Products LLC (formerly Nelson Metal Products Corporation) (collectively "Defendants") pursuant to Sections 113(b) and 304(a)(1) of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7413(b), 7614(a)(1). Both J.L. French LLC and Nelson Metal Products LLC are wholly-owned subsidiaries of J.L. French Automotive Castings, Inc.

3. Defendants have been, and continue to be, in violation of Section 112 of the Act, 42 U.S.C. § 7412, and the National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Secondary Aluminum Production, codified at 40 C.F.R. Part 63, Subpart RRR, at their facilities located in Sheboygan, Wisconsin and Glasgow, Kentucky. Defendants have also been and continue to be in violation of Kentucky regulations, 401 Ky. Admin. Regs. 63:002, at the Glasgow Facility.

4. Plaintiffs seek injunctive relief and the assessment of civil penalties measured from the effective date of the Plan of Reorganization, identified in Paragraph 10 below, to address Defendants' past and ongoing violations.

## JURISDICTION, VENUE, AND NOTICE

5. This Court has jurisdiction over the subject matter and over the parties pursuant to Sections 113(b) and 304(a) of the Act, 42 U.S.C. §§ 7413(b), 7604(a), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355(a).

6. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1391(b) and 1395(a) because alleged violations occurred within this district at a facility located in Sheboygan, Wisconsin.

7. Notice of the commencement of this action has been given to the State of Wisconsin and the Commonwealth of Kentucky, as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and to the EPA Administrator and the Defendant as required by Section 304(b) of the Act, 42 U.S.C. 7604)(b).

## DEFENDANTS

8. J.L. French LLC, a Wisconsin company with headquarters in Sheboygan, Wisconsin, is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

9. Nelson Metal Products LLC, a Delaware company with headquarters in Sheboygan, Wisconsin, is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

10. At times relevant to this Complaint, Defendants have owned and/or operated secondary aluminum processing facilities located at 4235 Gateway Drive, Sheboygan, Wisconsin ("Gateway Facility"); 3101 South Taylor Drive, Sheboygan, Wisconsin ("Taylor Facility"); and 20 Prestwick Drive, Glasgow, Kentucky ("Glasgow Facility"). On July 13, 2009, Defendants, along with several related companies, filed a petition for voluntary reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On September 3, 2009, the Bankruptcy Court approved a Plan of Reorganization ("the approved plan") in the case, which became effective on September 25, 2009.

## STATUTORY AND REGULATORY BACKGROUND

### Clean Air Act

11. The Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### NESHAPs

12. Congress has established a list of hazardous air pollutants ("HAPs"), which includes, among others, dioxins and furans ("D/F") and hydrogen chloride ("HCl"). 42 U.S.C. 28 U.S.C. 7412(b)(1). Pursuant to Section 112(b)(2) of the Act, 42 U.S.C. § 7412(b)(2), EPA periodically reviews the list of hazardous air pollutants and, where appropriate, revises the list by rule.

13. Section 112(c) of the Act, 42 U.S.C. § 7412(c), requires the U.S. EPA Administrator to publish a list of all categories and subcategories of major sources and certain area sources of the hazardous air pollutants listed pursuant to 42 U.S.C. § 7412(b).

14. Section 112(d) of the Act, 42 U.S.C. § 7412(d), requires the EPA Administrator to promulgate regulations establishing emission standards for each category and subcategory of major sources and area sources of HAPs. These emission standards are called the National Emission Standards for Hazardous Air Pollutants ("NESHAPs"). The NESHAPs apply to specific categories of stationary sources that emit or have the potential to emit one or more hazardous air pollutants listed in 40 C.F.R. Part 63 pursuant to Section 112(b) of the Act. 40 C.F.R. § 63.1(a)(2). Numerous "source categories" are regulated under the NESHAPs, including, for example, coke oven batteries (40 C.F.R. Part 63, Subpart L), dry cleaning operations (40 C.F.R. Part 63, Subpart M), and the printing industry (40 C.F.R. Part 63, Subpart KK).

15. The NESHAPs apply to facilities that are "major sources" and "area sources" of HAPs, 40 C.F.R. § 63.1500(b). Major sources are sources or groups of stationary sources located within a contiguous area and under common control that emit or have the potential to emit ten tons per year or more of any HAP, or twenty-five tons per year or more of any combination of HAPs. 42 U.S.C. § 7412(a)(1); 40 C.F.R. § 63.2. An "area source" is any stationary source of HAPs that is not a major source. 42 U.S.C. § 7412(a)(2). A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7412(a)(3) (by reference to 42 U.S.C. § 7411(a)).

16. Sections 113(a)(3) and (b) of the Act, 42 U.S.C. § 7413(a)(3), (b) prohibit violations of any NESHAP regulation. Thus, a violation of a NESHAP regulation is a violation of the Act.

NESHAP for Secondary Aluminum Production

17.     On March 23, 2000, EPA promulgated the NESHAP for Secondary Aluminum Production, which is set forth at 40 C.F.R. Part 63, Subpart RRR ("Subpart RRR"). 65 Fed. Reg. 15,690 (Mar. 23, 2000). Subpart RRR sets forth specific regulations for emission standards and operating requirements; monitoring and compliance requirements; and notifications, reports and record keeping requirements.

18.     The requirements of Subpart RRR apply to the owner or operator of a "secondary aluminum production facility," 40 C.F.R. § 63.1500(a), which is defined as "any establishment using clean charge, aluminum scrap, or dross from aluminum production, as the raw material and performing one or more of the following processes: scrap shredding, scrap drying/delacquering/ decoating, thermal chip drying, furnace operations (i.e., melting, holding, sweating, refining, fluxing, or alloying), recovery of aluminum from dross, in-line fluxing, or dross cooling." 40 C.F.R. § 63.1503.

19.     Subpart RRR applies to specified affected sources located at a secondary aluminum production facility that is a major source or an area source of HAPs. These affected sources include aluminum scrap shredders, thermal chip dryers, scrap dryers/delacquering kiln/decoating kilns, group 2 furnaces, sweat furnaces, dross-only furnaces, rotary dross coolers, and secondary aluminum processing units, all of which are defined at 40 C.F.R. § 63.1503. 40 C.F.R. § 63.1500(b).

20.     The requirements of Subpart RRR pertaining to dioxin and furan emissions and associated operating, monitoring, reporting, and recordkeeping apply to specified affected sources located at a secondary aluminum production facility that is an area source of HAPs. These affected sources include thermal chip dryers, scrap dryers/delacquering kiln/decoating

kilns, sweat furnaces and secondary aluminum processing units, as defined at 40 C.F.R. § 63.1503, 40 C.F.R. § 63.1500(c).

21.     The owner or operator of an existing affected source was required to comply with the requirements of Subpart RRR no later than March 24, 2003.  40 C.F.R. § 63.1501(a).

Title V Permit

22.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including NESHAP requirements, are collected in one place.

23.     The Kentucky Department for Environmental Protection Title V operating permit program was approved by EPA on November 30, 2001. These regulations are currently codified at 401 Ky. Admin. Regs. 52:020.

24.     Pursuant to 401 Ky. Admin. Regs. 52:020 Section 1(4)(a), an owner or operator of a major stationary source subject to a standard under the National Emission Standards for Hazardous Air Pollutants must obtain a state permit from the Kentucky Department for Environmental Protection.

25.     A permit issued by the Kentucky Department for Environmental Protection under 401 Ky. Admin. Regs. 52:020 includes emissions limitations, operational requirements, and other provisions needed to ensure compliance with all applicable requirements at the time of permit issuance.  The permit also requires the permittee to comply with all emissions monitoring and analysis procedures or test methods required under the applicable requirements, including any procedures and methods promulgated pursuant to Section 114(a)(3) or 504(b) of the Act. 401 Ky. Admin. Regs. 52:020.

26. Pursuant to Section 502(a) of the Act, 42 U.S.C. § 7661a, it is unlawful for a major source to operate in violation of a permit issued under Title V of the Act, 42 U.S.C. § 7661 *et seq*. *See also* 40 C.F.R. § 70.7(b) and 401 Ky. Admin. Regs. 52:020.

Enforcement

27. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action for a permanent or temporary injunction, and/or for the assessment of a civil penalty of up to $25,000 per day for each violation whenever any person violates any requirement of the Act. The Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2641, as amended by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, required the U.S. EPA to adjust penalties for inflation on a periodic basis. Pursuant to 40 C.F.R. Part 19, the United States may seek civil penalties of up to $27,500 per day for each violation occurring January 31, 1997 through March 15, 2004; up to $32,500 per day for each violation occurring March 16, 2004 through January 12, 2009; and up to $37,500 per day for each violation occurring on or after January 13, 2009.

28. Section 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1), authorizes the Commonwealth of Kentucky to commence a civil action against any person who is alleged to have violated an emission standard or limitation under the Act.

GENERAL ALLEGATIONS

29. At times relevant to this Complaint, the Defendants owned and operated three secondary aluminum production facilities, each of which is a "secondary aluminum production facility" as defined in 40 C.F.R. § 63.1503. These facilities are located at 4235 Gateway Drive, Sheboygan, Wisconsin ("Gateway Facility"); 3101 South Taylor Drive, Sheboygan, Wisconsin ("Taylor Facility"); and 20 Prestwick Drive, Glasgow, Kentucky ("Glasgow Facility").

30. The Defendants are, and at all relevant times have been, the "owner" and "operator" of the facilities within the meaning of Section 112(a)(9) of the Act, 42 U.S.C. § 7412(a)(9), and the federal, state, and local regulations promulgated pursuant to the Act.

31. At times relevant to this Complaint, the Defendants' covered facilities have each processed aluminum scrap and, in some instances, aluminum dross to produce various secondary aluminum products.

32. Each facility is a "stationary source" as defined in Sections 111(a)(3) and 112(a)(3) of the Act, 42 U.S.C. §§ 7411(a)(3) and 7412(a)(3), and the federal, state, and local regulations promulgated pursuant to the Act.

33. At times relevant to this Complaint, the Gateway, Taylor, and Glasgow facilities are and/or have been "major sources" as defined in Section 112(a)(1) of the Act, 42 U.S.C. § 7412(a)(1), and the federal, state, and local regulations promulgated pursuant to the Act.

34. Each facility contains one or more existing emission units or affected sources of hazardous air pollutants, which collectively include but are not limited to, aluminum scrap shredders, thermal chip dryers, scrap dryers, delacqering kilns, group 2 furnaces, rotary dross coolers, secondary aluminum processing units (which encompasses all existing group 1 furnaces and all existing in-line fluxers within a secondary aluminum production facility, each of which individually is an "emission unit," 40 C.F.R. §§ 63.1500(b), 63.1503.).

35. On September 3, 2004, EPA issued a Finding of Violation ("FOV") related to Subpart RRR requirements for the Gateway Facility.

36. On July 24, 2006, EPA issued a Notice of Violation ("NOV") related to Subpart RRR requirements for the Glasgow Facility.

37. On January 27, 2006, February 20, 2006, April 27, 2006, and February 7, 2007, the Commonwealth of Kentucky issued NOVs related to Subpart RRR requirements for the Glasgow Facility.

FIRST CLAIM FOR RELIEF
*D/F Emissions Exceedance: Gateway Facility*

38. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39. Subsection 63.1505(i) of the Subpart RRR regulations prohibits an owner or operator of a group 1 furnace from discharging or causing to be discharged into the atmosphere emissions in excess of 15 µg of D/F TEQ per Mg ($2.1 \times 10^{-4}$ grams TEQ per ton) of feed/charge from a group 1 furnace at a secondary aluminum production facility that is a major or area source.

40. Defendants are the owner and/or operator of a group 1 furnace (hereinafter "Furnace #14"), located at Defendants' Gateway Facility.

41. Beginning no later than June 24, 2009, Defendants' Furnace #14 exceeded its D/F emissions limit of 15 µg of D/F TEQ per Mg ($2.1 \times 10^{-4}$ grams TEQ per ton) of feed/charge in violation of 40 C.F.R. § 63.1505(i). Since at least June 24, 2009, Defendants have lacked sufficient mechanisms or control technologies to ensure compliance with the applicable emissions limit for D/F, and, more likely than not, have violated that emission limit on one or more days when Furnace #14 has been in operation.

42. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

SECOND CLAIM FOR RELIEF
*Failure to Install Adequate Capture and Collection System:*
*Glasgow Facility*

43. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

44. At times relevant to this Complaint, Defendants have owned and operated, and continue to own and operate, affected sources and emission units equipped with add-on air pollution control devices at the Glasgow secondary aluminum production facility.

45. As required by 40 C.F.R. § 63.1506(c), an owner or operator of an affected source or emission unit equipped with an add-on air pollution control device must design and install a system for the capture and collection of emissions to meet the engineering standards for minimum exhaust rates as published by the American Conference of Governmental Industrial Hygienists in Chapters 3 and 5 of "Industrial Ventilation: A Manual of Recommended Practice" 23rd edition ("ACGIH Manual"), which is incorporated into Subpart RRR by reference at 40 C.F.R. § 63.1502.

46. At the Glasgow facility, Defendants have failed to design and install a capture and collection system for one or more affected emission units that meets the engineering standards for minimum exhaust rates as published in Chapters 3 and 5 of the ACGIH manual.

47. By failing to design and install an adequate capture and collection system at the Glasgow facility, Defendants have been, and continue to be, in violation of 40 C.F.R. §§ 63.1506(c).

48. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

### THIRD CLAIM FOR RELIEF
*Failure to Properly Label Emission Units: Glasgow Facility*

49. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

50. Subsection 63.1506(b) of the Subpart RRR regulations requires the owner or operator of an affected source or emission unit to provide and maintain easily visible labels that

- 10 -
Case 2:11-cv-00860-CNC   Filed 09/12/11   Page 10 of 20   Document 1

identify the applicable emission limits and means of compliance, posted at each group 1 furnace, group 2 furnace, in-line fluxer and scrap dryer/delacquering kiln/decoating kiln.

51.     At times relevant to this Complaint, Defendants have owned and operated one or more group 1 furnaces and a scrap dryer at its Glasgow Facility. These Group 1 furnaces and scrap dryer have lacked labels that identify the applicable emission limits and means of compliance, in violation of 40 C.F.R. § 63.1506(b).

52.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

## FOURTH CLAIM FOR RELIEF
*Failure to Properly Operate Scrap Dryer:  Glasgow Facility*

53.     Paragraphs 1 through 37 are realleged and incorporated herein by reference

54.     The Subpart RRR regulations set forth various requirements applicable to any scrap dryer/delacquering kiln/decoating kiln as those terms are defined by 40 C.F.R. § 63.1503. Specifically, 40 C.F.R. § 63.1506(g) sets forth operating parameters; 40 C.F.R. § 63.1511(b) sets forth requirements pertaining to demonstrating initial compliance; and 40 C.F.R. § 63.1512(c) sets forth requirements pertaining to performance tests to measure emissions of total hydrocarbon (THC), D/F, HCl, and particulate matter (PM).

55.     At times relevant to this Complaint, Defendants have owned and operated a scrap dryer at the Glasgow Facility. Defendants have failed to comply with the operating requirements, initial compliance requirements, and performance test requirements of 40 C.F.R. §§ 63.1506(g), 63.1511(b), and 63.1512(c) pertaining to scrap dryers.

56. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

FIFTH CLAIM FOR RELIEF
*Failure to Submit and Implement a Proper OM&M Plan:
Taylor, Gateway, and Glasgow Facilities*

57. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

58. Subsection 63.1510(b) of the Subpart RRR regulations requires the owner or operator of an affected source or emission unit to prepare and implement a written operation, maintenance, and monitoring (OM&M) plan. Each plan must satisfy the conditions set forth in 40 C.F.R. § 63.1510(b)(1)-(8), and contain, *inter alia*, process and control device parameters to be monitored to determine compliance, along with established operating levels or ranges for each process and control device; procedures for the proper operation and maintenance of monitoring devices or systems used to determine compliance, including calibration and certification of accuracy of each monitoring device; and procedures for monitoring process and control device parameters.

59. At times relevant to this Complaint, Defendants have owned and operated one or more affected sources or emission units at the Taylor, Gateway, and Glasgow Facilities. Defendants have failed to prepare and implement an OM&M plan for affected sources or emission units at these facilities that meets the requirements of 40 C.F.R. § 63.1510(b)(1)-(8). In particular, Defendants have failed to prepare and implement an OM&M plan that: identifies each affected emission source; establishes an operating cycle for the affected emission units; contains operational ranges for each process and control device parameters; contains procedures for determining charge/feed weights; specifies the calibration frequency of the process or control

device monitors; and specifies or discusses the ammonia injection system or identifies the operational parameters to be monitored. Additionally, Defendants' OM&M plan fails to identify each emission unit within the Secondary Aluminum Production Unit ("SAPU"), and does not contain the emission limits for each SAPU.

60. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

### SIXTH CLAIM FOR RELIEF
*Failure to Properly Monitor and Record*
*Fabric Filter Inlet Temperature: Glasgow Facility*

61. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

62. Subsection 63.1510(h) of the Subpart RRR regulations requires the owner or operator of a group 1 furnace using a lime-injected fabric filter to install, calibrate, maintain and operate a device to continuously monitor and record the temperature of the fabric filter inlet gases consistent with the requirements for continuous monitoring systems listed in 40 C.F.R. Part 63, Subpart A. The temperature monitoring device must meet each of the performance and equipment specifications set forth in 40 C.F.R. § 63.1510(h)(2)(i)-(iii).

63. At times relevant to this Complaint, Defendants have owned and/or operated one or more group 1 furnaces with emissions controlled by a lime-injected fabric filter at the Glasgow Facility. Defendants have failed to properly monitor and record the fabric filter inlet temperature for one or more fabric filters associated with Defendants' group 1 furnaces, in violation of 40 C.F.R. § 63.1510(h).

64. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

### SEVENTH CLAIM FOR RELIEF
*Failure to Properly Monitor and Record*
*Reactive Flux Injection Rate: Glasgow Facility*

65. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

66. Subsection 63.1510(j) of the Subpart RRR regulations requires the owner or operator of a group 1 furnace to install, calibrate, maintain and operate a device to continuously measure and record the weight of gaseous or liquid reactive flux injected to each affected source or emission unit. The accuracy of the weight measurement device must be $\pm 1$ percent of the weight of the reactive component of the flux being measured. Subsection 63.1510(j) requires the owner or operator to calculate and record the gaseous or liquid reactive flux injection rate for each operating cycle, and to record, for each 15-minute block period during each operating cycle, the time, weight, and type of flux for each addition of: (1) gaseous or liquid reactive flux other than chlorine; and (2) solid reactive flux.

67. At times relevant to this Complaint, Defendants have owned and/or operated one or more group 1 furnaces at the Glasgow Facility. Defendants have failed to properly record solid flux usage or calculate the total reactive flux injection rate for each operating cycle of the group 1 furnaces, and have failed to measure the reactive flux with the required accuracy in violation of 40 C.F.R. § 63.1510(j).

68. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

## EIGHTH CLAIM FOR RELIEF
*Failure to Conduct Performance Tests:
Taylor, Gateway, and Glasgow Facilities*

69. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

70. Subsection 63.1511(b) of the Subpart RRR regulations requires the owner or operator of an existing affected source or emission unit to conduct performance testing to demonstrate compliance with each applicable emission, equipment, work practice, or operational standard for that source or unit no later than March 24, 2003.

71. Performance testing must be conducted pursuant to the requirements of 40 C.F.R. §§ 63.1511 and 63.1512. These provisions require, *inter alia*, that testing be conducted while the affected source or emission unit is operating at the highest production level, at the highest reactive fluxing rate, and with charge materials representative of the range of materials processed by the unit, 40 C.F.R. § 63.1511(b)(1); that testing consist of three separate runs, with pollutant sampling for each run conducted over the entire process operating cycle or, for a continuous process, for a minimum of three hours, 40 C.F.R. § 63.1511(b)(2) and (3); that testing of commonly ducted units that are not in a secondary aluminum processing unit ("SAPU") be conducted while the affected units are operating simultaneously under the highest reasonably expected load or capacity, 40 C.F.R. § 63.1511(i)(4); and that appropriate procedures be used to establish an operating parameter values for each parameter to be monitored as required by 40 C.F.R. §§ 63.1510, 63.1511(g), and 63.1512.

72. At each of the Gateway, Taylor, and Glasgow facilities, the Defendants have failed to conduct proper initial performance tests of one or more affected sources or emission units in accordance with the requirements of 40 C.F.R. § 63.1511, or have conducted such tests after March 24, 2003, in violation of 40 C.F.R. § 63.1501. Specifically, with respect to the

- 15 -
Case 2:11-cv-00860-CNC   Filed 09/12/11   Page 15 of 20   Document 1

Glasgow facility, Defendants have failed to conduct proper initial performance tests of a scrap dryer and two group 1 reverberatory furnaces. With respect to the Taylor facility, Defendants have failed to conduct a proper initial performance test of group 1 furnaces and an aluminum scrap dryer. With respect to the Gateway facility, Defendants have failed to conduct proper initial performance tests of an aluminum scrap dryer and one or more group 1 reverberatory furnaces, including but not limited to Furnaces #10, 11, and 14.

73. Defendants' operation of the Gateway, Taylor, and Glasgow Facilities without having properly and timely conducted initial performance tests, and without having properly and timely established operating parameters as required by 40 C.F.R. § 63.1511(b), (g), violates the operating requirements of 40 C.F.R. § 63.1506.

74. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the effective date of the approved plan.

## NINTH CLAIM FOR RELIEF
*Failure to Submit Notice of Compliance Status Report:*
*Taylor, Gateway, and Glasgow Facilities*

75. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

76. Subsection 63.1515(b) of the Subpart RRR regulations requires the owner or operator of an existing affected source to submit a notification of compliance status report ("NOCSR") within 60 days after March 24, 2003, and the owner or operator of a new affected source to submit a NOCSR within 90 days after the initial performance test required by 40 C.F.R. § 63.1510. Under 40 C.F.R. § 63.1515(b)(5), a complete notification of compliance status report must include, *inter alia*, design information and analysis with supporting documentation that demonstrates conformance with the requirements for systems used for capture/collection of

hazardous air pollutants in 40 C.F.R. § 63.1506(c). The requirements for a complete notification of compliance status report are listed at 40 C.F.R. § 63.1515(b)(1)-(10). Among these requirements is a complete performance test report for each affected source and emissions unit for which a performance test is required.

77. For each of the Gateway, Taylor, and Glasgow facilities, the Defendants have failed to submit a complete notice of compliance status report that incorporates all the required elements listed at 40 C.F.R. § 63.1515(b)(1)-(10). Specifically, with respect to the Gateway Facility, Defendants submitted a NOCSR in May 2003 that contained incomplete design information of the capture/collection system in violation of 40 C.F.R. § 63.1515(b)(5), and has yet to submit a complete NOCSR with such information or submit a complete NOCSR with a complete performance test report for the facility's scrap dryer or group 1 furnaces (Furnaces #10, 11, and 14). Additionally, Defendants failed to submit a NOCSR containing a complete performance test report for the Gateway facility's group 1 furnace #12 until December 18, 2009. With respect to the Taylor Facility, Defendants submitted an incomplete NOCSR in May 2003 that did not properly establish the calculation of the maximum aluminum throughput rate for the time period of the relevant stack tests, and contained incomplete design information for the capture/collection system in violation of 40 C.F.R. § 63.1515(b)(5), and has yet to submit a complete report with such information or submit a complete NOCSR with a complete performance test result for the Taylor facility's scrap dryer and group 1 furnaces. With respect to the Glasgow Facility, Defendants have failed to submit any notice of compliance status report.

78. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject J.L. French to injunctive relief and a civil penalty of up to $37,500 per day for each violation occurring on or after the date of the approved plan.

## TENTH CLAIM FOR RELIEF
*Failure to Accurately Certify Compliance Status:
Taylor, Gateway, and Glasgow Facilities*

79. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

80. Subsection 63.1516(c) of the Subpart RRR regulations requires the owner or operator of an existing affected source or emission unit to submit an annual compliance certification in accordance with 40 C.F.R. Part 70, certifying continuing compliance with all applicable monitoring, recordkeeping, and reporting requirements.

81. Defendants have submitted deficient annual certifications of compliance with respect to each of the Taylor, Gateway, and Glasgow facilities, as the certifications have failed to identify the violations listed and described throughout this Complaint, in violation of 40 C.F.R. § 63.1516(c).

82. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and a civil penalty of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs United States of America and the Commonwealth of Kentucky respectfully request that this Court:

(a) Issue an injunction requiring Defendant J.L. French LLC and Defendant Nelson Metal Products LLC to remedy past and current noncompliance with the Clean Air Act and the NESHAP requirements and to comply prospectively with all applicable requirements;

(b) Assess civil penalties against Defendants for up to the amounts provided in the Act for each day of violation of the Act;

(c) Award Plaintiffs their costs and disbursements in this action; and

(d) Grant such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

Date: 9/12/11

W. BENJAMINW. FISHEROW
Acting Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

Date: 9/12/11

NIGEL B. COONEY
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: 202-305-2775
Facsimile: 202-616-6584

OF COUNSEL:

DEBORAH CARLSON
Associate Regional Counsel
U.S. EPA Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590

MICHIKO KONO
Associate Regional Counsel
U.S. EPA Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

FOR THE COMMONWEALTH OF KENTUCKY

Date: 9/7/2011

*[signature]*
JACQUELYN A. QUARLES
Office of General Counsel
Energy and Environmental Cabinet
200 Fair Oaks Lane, 1st Floor
Frankfort, Kentucky 40601
(502) 564-3999 Ext. 4553

Case 2:11-cv-00860-CNC   Filed 09/12/11   Page 20 of 20   Document 1